UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADELINE NELSON,

Plaintiff,

-v-

THE CITY OF NEW YORK and NEW YORK CITY
POLICE DEPARTMENT ("NYPD") OFFICER
CRISTIAN CHANG, SHIELD NO. 940985,

Defendants.

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

**Index No.**

**ECF CASE**

Plaintiff MADELINE NELSON, by her counsel, GIDEON ORION OLIVER, as and for

her Complaint against Defendants, hereby alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988 for violations of her civil

rights, as secured by said statutes and the Constitution of the United States and the Constitution

and laws of the State of New York.

2.      On November 20, 2011, Ms. Nelson was lawfully engaging in expressive conduct

protected by the First Amendment to the United States Constitution and Article I, Section 8 of

the New York State Constitution, when, without lawful authority or justification, and acting

pursuant to the unlawful policies, practices, and customs complained of elsewhere herein,

Defendant CRISTIAN CHANG unlawfully arrested Ms. Nelson.

3.      Specifically, Ms. Nelson had been protesting with others across the street from

then-New York City Mayor Michael Bloomberg's private townhouse on the Upper East Side of

Manhattan by banging on a metal pot with a spoon in a protest associated with Occupy Wall

Street ("OWS").

4.      Defendant Chang thereafter detained and arrested Ms. Nelson unlawfully, falsely

filled out NYPD paperwork suggesting that Ms. Nelson had acted unlawfully when she had not,

failed properly to voucher her property, improperly classified her pot and spoon as arrest

evidence as the instrumentality of an offense, and caused Ms. Nelson to be detained for over

twenty-four hours before she was eventually released from 100 Centre Street, without any

charges.

5.      After her release, it took Ms. Nelson approximately thirty hours between

November 21, 2011 and December 20, 2011, and around six trips to four different NYPD

precincts or other facilities, before Ms. Nelson was able to retrieve her pot and spoon from an

NYPD warehouse in Queens.

6.      Some of Ms. Nelson's relevant experiences have been dramatized in the book *Pot

and Spoon: a True Tale of Occupy Wall Street*, written by Jerry Goralnick and illustrated by

Ruthie Rosenfeld, a free download of which is available at www.potandspoon.com.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the

First, Fourth, and Fourteenth Amendments to the United States Constitution.

8.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant

to 28 U.S.C. §§ 1331, 1343(a)(3-4).

9.      Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiff's claims arose in

the Southern District of New York.

## PARTIES

10.     Plaintiff MADELINE NELSON is a Caucasian female, and at all times relevant to

this action was a resident of New York City.

11.     Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

12.     Defendant City is authorized by law to maintain the NYPD, which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

13.     Defendant NYPD OFFFICER CRISTIAN CHANG, was at all times herein an officer, employee, and agent of the NYPD and was personally involved in depriving Ms. Nelson of her rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below.

14.     Defendant Chang is being sued herein in his individual and official capacities.

15.     At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

16.     Each and all of the acts of Defendant Chang alleged herein were done by him while acting within the scope of his employment by the Defendant City.

17.     Each and all of the acts of the Defendant Chang alleged herein were done by Defendant Chang while acting in furtherance of his employment by the Defendant City.

18.     Defendant Chang was responsible for implementing and/or enforcing the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through his acts and/or failures to act, as set forth more fully below.

19.     At all times relevant herein, as set forth more fully below, Defendant Chang's

actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate

indifference to or a reckless regard for the natural and probable consequences of his acts and/or

omissions.

## STATEMENT OF FACTS

20.     Prior to Ms. Nelson's arrest on November 20, 2011, Ms. Nelson was engaged in

expressive conduct protected by the First Amendment to the United States Constitution Article I,

Section 8 of the New York State Constitution.

21.     Specifically, Ms. Nelson was participating in a noise demonstration with other

demonstrators by banging on a pot and spoon and otherwise making expressive noise.

22.     By way of background, Ms. Nelson had participated in OWS between September

2011 and November 20, 2011.

23.     Among other ways, Ms. Nelson participated in OWS through her in the Kitchen

Working Group and participating in drum and dance circles in Zuccotti Park.

24.     At around 1:00AM on November 15, 2011, the City staged a massive,

unannounced raid of Zuccotti Park, sweeping the park of protesters and their property.

25.     The next day, then-Mayor Michael Bloomberg was widely quoted as saying that

the decision to raid the park had been his.

26.     At some time before November 20, 2011, in a direct response to the Mayor's

comments, activists called for an "OCCUPY BLOOMBERG'S MANSION DRUM CIRCLE

PROTEST / ANTI-DICTATOR ART SHOW."

27.     The Facebook call stated: SHOW UP/ARRIVE AT 17 EAST 79 STREET AT

2PM TODAY! BRING DRUMS AND OTHER MUSICAL INSTRUMENTS AND FOOD

4

SLEEPING BAGS BANNERS ART AND ART SUPPLIES / LET'S OCCUPY THE PARK AT

79ST AND HAVE A LOVE-IN AND SERENADE MAYOR MIKE."

28.     Ms. Nelson intended to join protesters with her pot and spoon, in sum and

substance to communicate to the Mayor and to the people that they were still together, talking,

and working.

29.     Ms. Nelson rode her bicycle to the vicinity of 17 East 79th Street at around

between 6:00PM and 6:30PM.

30.     Upon information and belief, when protesters arrived at 79th Street and 5th Avenue

by around 2:00PM, they were met by a large contingent of NYPD officers, including NYPD

officers on marked scooters, and NYPD Community Affairs officers.

31.     By 2:00PM, NYPD officers had already set up interlocking metal barricades

completely blocking the sidewalk on 79th Street near 17 East 79th Street, between 5th Avenue and

Madison, creating a frozen zone where no perceived protesters could enter and demanding

identification from anyone who wanted to enter the frozen zone.

32.     By around 2:00PM, NYPD officers had already set up interlocking metal

barricades far across the street from17 East 79th Street adjacent to Central Park, creating a metal

pen or cage.

33.     Between 2:00PM and the time Ms. Nelson was arrested, NYPD officers forced

people they perceived to be protesters into the metal pen or cage.

34.     Between 2:00PM and the time Ms. Nelson was arrested, NYPD officers

repeatedly forced people they perceived to be non-protesters, who slowed down to listen to, talk

with, or otherwise engage with the protesters, to move on, although they were not blocking

pedestrian or vehicular traffic.

35.     At some time after approximately 7:00PM but before 10:00PM, an unidentified NYPD officer in a white shirt approached Ms. Nelson and placed her under arrest, taking her pot and spoon from her hands and stating, "You won't need these where you are going."

36.     Immediately before the officer did so, Ms. Nelson had been hanging her metal pot with her spoon, as she had been doing, along with others, on and off for more or less the whole time she had been in the area.

37.     Once under arrest, Ms. Nelson was turned over by an unidentified supervisor to Defendant Chang.

38.     In Defendant Chang's custody, Ms. Nelson was transported to the NYPD's 33rd Precinct, located in Washington Heights, at 2207 Amsterdam Avenue, New York, NY  10032.

39.     At the NYPD's 33rd Precinct, Defendant Change filled out NYPD paperwork listing arrest charges of violating New York State Penal Law ("PL") §195.05 (Obstruction of Governmental Administration in the Second Degree ("OGA")), PL §240.26(3) (Harassment in the Second Degree) and PL § 240.20(6) (Disorderly Conduct – Failure to Obey a Lawful Order to Disperse).

40.     Under the New York State Penal Law, a person is guilty of violating PL § 195.05 and committing OGA, a class A misdemeanor, when the person

> intentionally obstructs, impairs or perverts the administration  of  law or other  governmental  function  or  prevents or attempts to prevent a  public servant  from  performing  an  official  function,  by  means  of intimidation,  physical  force  or  interference,  or  by  means of any independently unlawful act, or by means of interfering, whether  or  not physical  force  is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a  county, city,  town,  village,  fire district or emergency medical service or by means of releasing a dangerous animal under circumstances  evincing  the actor's intent that the animal obstruct governmental administration.

41.     Under the New York State Penal Law, a person is guilty of violating PL §
240.26(3) and committing Harassment in the Second Degree, a violation, not a crime, when,
"with intent to harass, annoy or alarm another person:  . . . 3. He or she engages in a course of
conduct or repeatedly commits acts which alarm or seriously annoy such other person and which
serve no legitimate purpose."

42.     Under the New York State Penal Law, a person is guilty of Disorderly Conduct in
violation of PL § 240.26(6), a violation, not a crime, when,"with intent to cause public
inconvenience, annoyance or alarm, or recklessly creating a risk thereof. . . He [sic] congregates
with other persons in a public place and refuses to comply with a lawful order of the police to
disperse."

43.     At no time prior to Ms. Nelson's arrest did she make an amount of noise that was
unreasonable under the circumstances.

44.     At no time prior to Ms. Nelson's arrest did she congregate with two or more
people and refuse a lawful police order to disperse.

45.     At no time prior to Ms. Nelson's arrest did she intentionally obstruct, impair, or
pervert the administration of law or other governmental function or prevent or attempt to prevent
a public servant from performing an official function, by any means.

46.     At no time prior to Ms. Nelson's arrest did she engage in a course of conduct or
repeatedly commit acts which alarm or seriously annoy another person and serve no legitimate
purpose.

47.     As part of processing Ms. Nelson's arrest, Defendant Chang created documents
associated with NYPD Complaint No. 2011-19-007673.

48.     As part of processing Ms. Nelson's arrest, Defendant Chang created documents associated with NYPD Arrest No. M11701121.

49.     At or before around 12:15AM on November 21, 2011, as part of processing Ms. Nelson's arrest, Defendant Chang vouchered 8 separate items of Ms. Nelson's property for safekeeping, as follows:

    a.  OTHER OFFICE SUPPLY – ASSORTED COLORS – PAPERBACK BOOK (1)
    b.  OTHER MUSICAL INSTRUMENTS – MULTICOLORED – WHITE METAL HORN (1)
    c.  PEN – ASSORTED COLORS (4)
    d.  PAPER – ASSORTED COLORS (1)
    e.  OTHER ACCESSORY – WHITE – 99% PIN (1)
    f.  HANDBAG – BLACK – TREK HANDBAG (1)
    g.  OTHER – BLUE – METAL WATER BOTTLE (1)

50.     As part of that vouchering process, Defendant Chang created a Property Clerk Invoice (PD 521-141) Invoice No. 1000098608 and PETS No. 1300050328.

51.     At or before around 12:15AM on November 21, 2011, as part of processing Ms. Nelson's arrest, Defendant Chang vouchered $35 in cash for safekeeping.

52.     As part of that vouchering process, Defendant Chang created a Property Clerk Invoice (PD 521-141) Invoice No. 1000098616 and PETS No. 2251522.

53.     During Ms. Nelson's arrest processing at the 33rd Precinct, she saw her pot and spoon on a table within the precinct.

54.     At some time on November 21, 2011, as part of processing Ms. Nelson's arrest, Defendant Chang vouchered Ms. Nelson's pot and spoon as arrest evidence.

55.     As part of that vouchering process, Defendant Chang created a Property Clerk Invoice (PD 521-141) Invoice No. 100098590.

56.     After some time at the 33rd Precinct, Ms. Nelson was transported to 100 Centre Street.

57.     At some time prior to Ms. Nelson's release on November 21, 2011, Defendant Chang reported to 100 Centre Street and met with an Assistant District Attorney or Assistant District Attorneys from the Office of the District Attorney of New York County ("DANY") in its Early Case Assessment Bureau ("ECAB").

58.     Upon information and belief, Defendant Chang brought NYPD records regarding the incident, including, but not limited to, the documents associated with NYPD Complaint No. 2011-19-007673, the documents associated with NYPD Arrest No. M11701121, and the Property Clerk Invoices mentioned in the preceding paragraphs, with him to 100 Centre Street.

59.     After interviewing Defendant Chang, DANY declined to prosecute the case.

60.     Ms. Nelson was ushered out the back door at 100 Centre Street without any charges.

61.     Ms. Nelson was in custody around than 24 hours before she was released from 100 Centre Street without any charges late on November 21, 2011.

62.     After Ms. Nelson was released, she returned to the vicinity of then-Mayor Bloomberg's townhouse to retrieve her bicycle.

63.     After her release, it took Ms. Nelson approximately thirty hours between November 21, 2011 and December 20, 2011, and around six trips to four different NYPD precincts or other facilities, before Ms. Nelson was able to retrieve her pot and spoon from an NYPD warehouse in Queens.

64.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

**FIRST CAUSE OF ACTION**

**DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**

65.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

66.     Defendants, under color of state law, unlawfully seized and arrested Plaintiff.

67.     Defendants did not have probable cause to arrest Plaintiff, nor was it objectively reasonable for Defendants to believe that they did have probable cause to arrest Plaintiff.

68.     Defendants' decision to arrest Plaintiff was based upon Plaintiff's First Amendment-protected expression, and not upon Plaintiff's violation of any provision of the law.

69.     By their conduct and actions and/or omissions in depriving Plaintiff of her freedoms to be let alone, to move freely, to assemble, to associate, and to enjoy her property, in seizing her, in falsely arresting her, in maliciously abusing process against her, in retaliating against them for the exercise of constitutionally protected rights, in violating her rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report or appeal, and/or by failing properly to train, supervise, or discipline employees of the Defendant CITY OF NEW YORK under their supervision, Defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived plaintiff of the equal protection of the

10

laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, and Fourteenth Amendments, and the attendant provisions of the New York State Constitution.

70.     By the conduct described above, Defendants, under color of state law, subjected Plaintiff to the foregoing acts and omissions without due process of law and in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, and the attendant provisions of the New York State Constitution, thereby depriving Plaintiff of her rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

a. Freedom to engage in protected speech, expression and association, without undue constraint or governmental retaliation;

b. Freedom from unreasonable seizures of their persons, including but not limited to the excessive use of force;

c. Freedom from arrest without probable cause;

d. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiff were aware and did not consent;

e. Freedom from deprivation of liberty and property without due process of law; and

f. The enjoyment of equal protection, privileges and immunities under the laws.

71.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### FALSE ARREST

72.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

73.     As a result of Defendants' conduct as described above, Plaintiff was subjected to illegal, improper, and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

74.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## THIRD CAUSE OF ACTION

### FIRST AMENDMENT

75.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76.     In detaining and arresting Plaintiff, in maliciously abusing process against Plaintiff, and in implementing, enforcing, encouraging, sanctioning, and/or ratifying policies, practices, and/or customs punishing peaceful protest, Defendants violated Plaintiff's rights to speak, assemble, associate, and petition the government for redress of grievances peaceably in retaliation for their speaking out on a matter of public concern.

77.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## FOURTH CAUSE OF ACTION

### SELECTIVE ENFORCEMENT

78.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

79.     Defendants' use of the New York State disorderly conduct statute against Plaintiff, but not others similarly situated, was invidiously discriminatory, malicious, purposeful, and/or arbitrary and capricious.

80.     Defendants' selective enforcement of the New York State disorderly conduct statute against Plaintiff violated Plaintiff's constitutional rights under the Fourth, and Fourteenth Amendments to the United States Constitution.

81.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## FIFTH CAUSE OF ACTION

## MALICIOUS ABUSE OF PROCESS

82.     Plaintiff incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     Defendants issued legal process in the form of police records relating to Plaintiff to detain and prosecute Plaintiff

84.     Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

85.     Defendants acted with malicious intent to do harm to Plaintiff without excuse or justification.

86.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## SIXTH CAUSE OF ACTION

### FAILURE TO INTERVENE

87.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

88.     Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

89.     Defendants were present for the above-described incident and witnessed other defendants unlawfully arrest Plaintiff.

90.     Plaintiff's was clearly without probable cause or other legal justification, and was based on facts alleged by Defendants, which Defendants knew to be false, yet Defendants failed to take any action or make any effort to intervene, halt or protect Plaintiff from being unlawfully and wrongfully arrested.

91.     As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## SIXTH CAUSE OF ACTION

### *MONELL* CLAIM AGAINST DEFENDANT CITY
### THROUGH 42 U.S.C. § 1983

92.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

93.     All of the acts and omissions by the named and unnamed individual police officer Defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Defendant CITY and its agency, the NYPD.

94.     Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

95.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

96.     The aforementioned customs, practices, procedures and rules of the CITY and the NYPD includes, but is not limited to:

    a.  The policy and practice of applying New York State and New York City statutes and regulations to unlawfully limit First Amendment conduct in connection with perceived protests and demonstrations;

    b.  The policy and practice of applying New York State and New York City statutes and regulations to unlawfully limit First Amendment conduct perceived to be associated with OWS;

    c.   The use of police resources such as barricades to corral and trap perceived participants in First Amendment assemblies; and

    d.   The policy, practice, and custom of improperly seizing property and marking it as arrest evidence;

    e.   The policy, practice, and custom of failing to offer arrestees whose property is seized meaningful post-deprivation notice and opportunity to be heard to obtain the release of such property.

97.    The aforementioned customs, practices, procedures and rules of the CITY and the NYPD were enacted based on Plaintiff's First Amendment protected activity and not for any legitimate law enforcement purpose.

98.    As a result of the foregoing, Ms. Nelson was unlawfully deprived of her rights to express herself and to assemble, her liberty rights, and her property rights, and was otherwise damaged and injured.

## JURY DEMAND

99.    Plaintiff demands a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

A.    Compensatory damages against the Defendants jointly and severally; and

B.    Punitive damages against each Defendant; and

C.    Attorney's fees and costs pursuant to 42 USC §1988; and

D.    Such other and further relief as the Court deems just and proper.

DATED:    New York, New York

November 20, 2014

Respectfully submitted,

Gideon Orion Oliver
*Attorney for Plaintiff*
277 Broadway, Suite 1501
New York, NY 10007
t: 646-263-3495